MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
HERNAN REYES, MARLON ANDRES
ARMIJOS CARRION, AARON MIGUEL
FLORES, and AGUSTIN CABRERA
*individually and on behalf of others similarly
situated,*

                              *Plaintiffs*,

             -against-
400 WEST 14TH INC. (d/b/a GASLIGHT),
WILLIAM C. REDDY, DAVID A CURRAN,
PETE COLLINS, and MATTHEW REINES

                           *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)**

**ECF Case**

       Plaintiffs Hernan Reyes, Marlon Andres Armijos Carrion, Aaron Miguel Flores, and

Agustin Cabrera individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against 400 West 14th Inc. (d/b/a Gaslight) ("Defendant

Corporation"), William C. Reddy, David A Curran, Pete Collins, and Matthew Reines allege as

follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of defendants 400 West 14th Inc., William C

Reddy, David A Curran, Pete Collins, and Matthew Reines (collectively "Defendants").

2.       Defendants own, operate, or control a cocktail lounge located at 400 West 14th

St, New York, New York 10014 under the name Gaslight.

3.      Upon information and belief, individual defendants William C Reddy, David A.

Curran, Pete Collins, and Matthew Reines serve or served as owners, managers, principals, or

agents of Defendant Corporation and, through this corporate entity, operate or operated the

cocktail lounge as a joint or unified enterprise.

4.      Plaintiffs primarily have been employed as barbacks, busboys, runners, and

porters, but they have been required to spend a considerable part of their work day performing

non-tipped duties, including but not limited to, various cocktail lounge duties such as cutting

lime, bringing ice up to the bar, bringing plates up, bringing eating utensils up from the

basement, bringing bottles from the basement, cleaning the beer coolers, cleaning and polishing

the cups and glasses, cleaning the bathroom, cleaning up broken glass, cleaning fruit containers

and placing fruit into the containers, cleaning the outside of the bar, cleaning the windows,

cleaning vomit from the floor, placing tables outside and then at the end of the night put the

tables inside, recycling empty bottles, making coffee and cappuccinos, taking sodas into the

kitchen, taking up cups for the coffee, taking in deliveries brought to the store, making the

drinks, helping the waitresses, taking out the trash, stocking the bar with ice, filling the fridge,

filling coolers, and sweeping and mopping (hereafter the "non-tipped, non-barback duties").

5.      At all times relevant to this Complaint, Plaintiffs have worked for Defendants in

excess of 40 hours per week, without appropriate minimum wage and overtime compensation for

the hours per week that they worked. Rather, Defendants have failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked over 40, either at the straight rate of pay or for any additional overtime premium. Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

6.      Defendants have employed and accounted for Plaintiffs as barbacks, busboys, runners, and porters in their payroll, but in actuality Plaintiffs' duties have required a considerable amount of time spent in non-tipped, duties.

7.      Regardless, at all times Defendants have paid Plaintiffs at the tip-credit rate.

8.      Under state law, Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped duties exceed 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y.C.R.R. §146.

9.      Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as barbacks instead of non-tipped employees. This allows Defendants to avoid paying Plaintiffs at the minimum wage rate and enables them to pay Plaintiffs the lower tip-credited rate.

10.      Defendants have maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and have made unlawful deductions from Plaintiffs' and other tipped employees' wages.

11.      Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

12.      At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per

- 3 -

week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

13.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

14.    Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

16.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims have occurred in this district, Defendants have maintain their corporate headquarters and offices within this district, and Defendants operate a cocktail lounge located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

17.    Plaintiff Hernan Reyes ("Plaintiff Reyes" or "Mr. Reyes") is an adult individual residing in Bronx County, New York.  Plaintiff Reyes was employed by Defendants from approximately January 2014 until on or about February 2016 and from approximately May 2016 until on or about December 2016.

18.    Plaintiff Marlon Andres Armijos Carrion ("Plaintiff Armijos" or "Mr. Armijos") is an adult individual residing in New York County, New York. Plaintiff Armijos was employed by Defendants from approximately August 2014 until on or about February 2015 and from approximately October 25, 2016 until on or about December 2016.

19.    Plaintiff Aaron Miguel Flores ("Plaintiff Miguel" or "Mr. Miguel") is an adult individual residing in Queens County, New York.  Plaintiff Miguel was employed by Defendants from approximately June 27, 2016 until on or about December 2016.

20.    Plaintiff Agustin Cabrera ("Plaintiff Cabrera" or "Mr. Cabrera") is an adult individual residing in Queens County, New York.  Plaintiff Cabrera has been employed by Defendants from approximately June 2014 until the present date.

*Defendants*

21.    At all relevant times, Defendants own, operate, or control a cocktail lounge located at 400 West 14th St, New York, NY 10014 under the name "Gaslight."

22.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

23.    Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r-s).

- 5 -

24.    Upon information and belief, 400 West 14th Inc. (d/b/a Gaslight) is a corporation organized and existing under the laws of the state of New York, and it maintains its principal place of business at 400 West 14th Street, New York, New York 10014.

25.    Defendant William C. Reddy is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant William C Reddy is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporation. Defendant William C Reddy possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation.  He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

26.    Defendant David A. Curran is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant David A. Curran is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporation. Defendant David A Curran possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

27.    Defendant Pete Collins is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Pete Collins is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporation. Defendant Pete Collins possesses operational control over Defendant Corporation, an ownership

interest in Defendant Corporation, or controls significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

28.     Defendant Matthew Reines is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Matthew Reines is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporation. Defendant Matthew Reines possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

29.     Defendants operate a cocktail lounge located in the Chelsea section of Manhattan in New York City.

30.     The individual defendants, William C. Reddy, David A. Curran, Pete Collins and Matthew Reines possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

31.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32.     Each Defendant possesses substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

33.     Defendants jointly have employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

34.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

35.     Upon information and belief, individual defendants William C. Reddy, David A. Curran, Pete Collins and Matthew Reines operate Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a.  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a corporation,

b.  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c.  transferring assets and debts freely as between all Defendants,

d.  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e.  operating Defendant Corporation for their own benefit and maintaining control over it as a closed corporation,

  f. intermingling assets and debts of their own with Defendant Corporation,

  g. diminishing and/or transferring assets of Defendant Corporation to avoid full

   liability as necessary to protect their own interests, and

  h. other actions evincing a failure to adhere to the corporate form.

36. At all relevant times, Defendants are Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

37. In each year from 2014 to the present, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38. In addition, upon information and belief, Defendants and/or their enterprise are directly engaged in interstate commerce. As an example, numerous items that are used in the cocktail lounge on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

39. Plaintiffs are former employees of Defendants who primarily have been employed as barbacks, busboys, runners, and porters. However, they spent a considerable amount of time performing the non-tipped, non-barback duties described above.

40. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Hernan Reyes*

41.    Plaintiff Reyes was employed by Defendants from approximately January 2014 until on or about February 2016 and from approximately May 2016 until on or about December 2016.

42.    Defendants ostensibly employed Plaintiff Reyes as a barback, busboy, runner, and a porter.

43.    However, Plaintiff Reyes was also required to spend a significant portion of his work day performing the non-tipped duties described above.

44.    Although Plaintiff Reyes was ostensibly employed as a barback, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

45.    Plaintiff Reyes regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.    Plaintiff Reyes' work duties required neither discretion nor independent judgment.

47.    Plaintiff Reyes regularly worked in excess of 40 hours per week.

48.    From approximately January 2014 until on or about February 2016, Plaintiff Reyes worked from approximately 7:00 p.m. until on or about 5:00 a.m. Wednesdays through Saturdays and from approximately 3:00 p.m. until on or about 6:00 a.m. three Saturdays a month (typically 40 to 55 hours per week).

49.    From approximately May 2016 until on or about December 2016, Plaintiff Reyes worked from approximately 10:00 a.m. until on or about 7:00 p.m. Wednesdays and Thursdays and from approximately 6:00 p.m. until on or about 5:00 a.m. or 5:30 a.m. Fridays and Saturdays (typically 40.5 hours per week).

50.    Throughout his employment with defendants, Plaintiff Reyes was paid his wages by check.

51.    From approximately January 2014 until on or about January 2016, Defendants paid Plaintiff Reyes $5.00 per hour for his regular hours and $9.38 per hour for some of his overtime hours.

52.    From approximately January 2016 until on or about February 2016, Defendants paid Plaintiff Reyes $7.50 per hour.

53.    From approximately May 2016 until on or about December 2016, Defendants paid Plaintiff Reyes $7.50 per hour and $12.00 per hour for some of his overtime hours.

54.    Plaintiff Reyes' pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

55.    In fact, every time there was a party or any other event, Defendants required Plaintiff Reyes to work an additional three to four hours past his scheduled departure time, and did not compensate him for the additional time they required him to work.

56.    Defendants never granted Plaintiff Reyes any breaks during his work shifts.

57.    Plaintiff Reyes was not required to keep track of his time, nor to his knowledge did Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

58.    Furthermore, Defendants did not provide Plaintiff Reyes with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

59.    Plaintiff Reyes was never notified by Defendants that his tips were being included as an offset for wages.

60.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Reyes' wages.

61.     In addition, defendants illegally withheld all of the credit card tips customers wrote in for Plaintiff Reyes.

62.     Defendants did not give any notice to Plaintiff Reyes, in English and in Spanish (Plaintiff Reyes' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

63.     Defendants required Plaintiff Reyes to purchase "tools of the trade" with his own funds—including shoes, shirts, and pants.

*Plaintiff Marlon Andres Armijos Carrion*

64.      Plaintiff Armijos was employed by Defendants from approximately August 2014 until on or about February 2015 and from approximately October 25, 2016 until on or about December 2016.

65.     Defendants ostensibly employed Plaintiff Armijos as a barback, busboy, runner, and a porter.

66.     However, Plaintiff Armijos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

67.     Although Plaintiff Armijos was ostensibly employed as a barback, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

68.     Plaintiff Armijos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

69.     Plaintiff Armijos' work duties required neither discretion nor independent judgment.

70.    From approximately August 2014 until on or about November 21, 2016, Plaintiff Armijos regularly worked in excess of 40 hours per week.

71.    From approximately August 2014 until on or about September 2014, Plaintiff Armijos worked from approximately 4:00 p.m. until on or about 10:00 p.m. to 12:00 a.m. four days a week and from approximately 10:00 a.m. until on or about 8:00 p.m. two days a week (typically 44 to 52 hours per week).

72.    From approximately October 2014 until on or about February 2015, Plaintiff Armijos worked from approximately 7:00 p.m. until on or about 6:00 a.m. four days a week and from approximately 10:00 a.m. until on or about 7:00 p.m. one day a week (typically 53 hours per week).

73.    From approximately October 25, 2016 until on or about November 20, 2016, Plaintiff Armijos worked from approximately 10:00 a.m. until on or about 7:00 p.m. one day per week and from approximately 5:00 p.m. or 6:00 p.m. until on or about 5:30 a.m. or 6:00 a.m. three days per week (typically 45.75 hours per week).

74.    From approximately November 21, 2016 until on or about December 2016, Plaintiff Armijos worked from approximately 7:00 p.m. until on or about 5:00 a.m. or 6:00 a.m. three days per week (typically 31.5 hours per week).

75.    Throughout his employment with Defendants, Plaintiff Armijos was paid his wages in checks.

76.    From approximately August 2014 until on or about February 2015, Defendants paid Plaintiff Armijos $5.00 per hour for his regular hours and $9.38 per hour for some of his overtime hours

77.     From approximately October 25, 2016 until on or about December 2016, Defendants paid Plaintiff Armijos $7.50 per hour for his regular hours and $12.00 per hour for some of his overtime hours.

78.     Defendants never granted Plaintiff Armijos any breaks during his work shifts.

79.     Plaintiff Armijos' pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

80.     In fact, Defendants frequently required Plaintiff Armijos to arrive one to two hours before his original start time and did not pay him for the extra time he worked.

81.     In addition, Plaintiff Armijos was not compensated for approximately 75 hours of pay from October 2016 until on or about December 2016.

82.     Plaintiff Armijos was never notified by Defendants that his tips were being included as an offset for wages.

83.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Armijos' wages.

84.     In addition, defendants illegally withheld all of the credit card tips customers wrote in for Plaintiff Armijos.

85.     Plaintiff Armijos was not required to keep track of his time, nor to his knowledge did Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

86.     Furthermore, Defendants did not provide Plaintiff Armijos with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

87. Defendants did not give any notice to Plaintiff Armijos, in English and in Spanish (Plaintiff Armijos' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

88. Defendants required Plaintiff Armijos to purchase "tools of the trade" with his own funds—including pants, shirts, and shoes.

*Plaintiff Aaron Miguel Flores*

89. Plaintiff Miguel was employed by Defendants from approximately June 27, 2016 until on or about December 2016.

90. Defendants ostensibly employed Plaintiff Miguel as a barback, busboy, runner, and a porter.

91. However, Plaintiff Miguel was also required to spend a significant portion of his work day performing the non-tipped duties described above.

92. Although Plaintiff Miguel was ostensibly employed as a barback, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

93. Plaintiff Miguel regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

94. Plaintiff Miguel's work duties required neither discretion nor independent judgment.

95. During approximately June 2016, Plaintiff Miguel worked from approximately 7:00 p.m. until on or about 6:00 to 6:30 a.m. Wednesdays and Thursdays and from approximately 8:00 p.m. until on or about 6:30 a.m. Fridays (typically 33 hours per week).

96. From approximately July 2016 until on or about December 2016, Plaintiff Miguel worked from approximately 7:00 p.m. until on or about 6:00 to 6:30 a.m. Thursdays and from

- 15 -

approximately 8:00 p.m. until on or about 6:30 a.m. Fridays (typically 21.5 to 22 hours per week).

97.    Throughout his employment with defendants, Plaintiff Miguel was paid his wages by check.

98.    Throughout his employment with defendants, Defendants paid Plaintiff Miguel $7.50 per hour.

99.    Defendants never granted Plaintiff Miguel any breaks during his work shifts.

100.    Plaintiff Miguel was never notified by Defendants that his tips were being included as an offset for wages.

101.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Miguel's wages.

102.    In addition, defendants illegally withheld all of the credit card tips customers wrote in for Plaintiff Miguel.

103.    Defendants did not give any notice to Plaintiff Miguel, in English and in Spanish (Plaintiff Miguel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

104.    Defendants required Plaintiff Miguel to purchase "tools of the trade" with his own funds—including shoes, shirts, and pants.

*Plaintiff Agustin Cabrera*

105.    Plaintiff Cabrera has been employed by Defendants from approximately June 2014 until the present date.

106.    Defendants have ostensibly employed Plaintiff Cabrera as a barback, busboy, runner, and a porter.

- 16 -

107.    However, Plaintiff Cabrera has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

108.    Although Plaintiff Cabrera has ostensibly been employed as a barback, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

109.    Plaintiff Cabrera regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

110.    Plaintiff Cabrera's work duties have required neither discretion nor independent judgment.

111.    From approximately June 2014 until on or about July 2015, Plaintiff Cabrera worked from approximately 7:00 p.m. until on or about 5:00 a.m. or 6:00 a.m. four days per week and from approximately 4:00 p.m. until on or about 6:00 a.m. one day per week (typically 56 hours per week).

112.    From approximately July 2015 until the present date, Plaintiff Cabrera has worked from approximately 10:00 a.m. until on or about 7:00 p.m. two days per week; however, he has worked until approximately 9:00 p.m. twice a month (typically 18 to 20 hours per week).

113.    Throughout his employment with defendants, Plaintiff Cabrera has been paid his wages by check.

114.    From approximately June 2014 until on or about January 2016, Plaintiff Cabrera was paid $5.00 per hour for his regular hours and $9.38 for some of his overtime hours.

115.    From approximately January 2016 until the present date, Plaintiff Cabrera has been paid $7.50 per hour.

116.    Defendants have never granted Plaintiff Cabrera any breaks during his work shifts.

- 17 -

117.    Plaintiff Cabrera has never been notified by Defendants that his tips are being included as an offset for wages.

118.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Cabrera's wages.

119.    In addition, defendants have illegally withheld all of the credit card tips customers have written in for Plaintiff Miguel.

120.    Defendants have not given any notice to Plaintiff Cabrera, in English and in Spanish (Plaintiff Miguel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

121.    Defendants have required Plaintiff Cabrera to purchase "tools of the trade" with his own funds—including two pairs of shoes, three shirts, and three pairs of pants.

*Defendants' General Employment Practices*

122.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, overtime and spread of hours pay as required by federal and state laws.

123.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law *inter alia*, by not paying them the wages they were owed for the hours they worked.

124.    Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

125.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly have harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice has included depriving the barbacks of a portion of the tips earned during the course of employment.

126.    Defendants unlawfully have misappropriated charges purported to be gratuities received by Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

127.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

128.    At no time have Defendants inform Plaintiffs that they reduce their hourly wage by a tip allowance.

129.    Defendants habitually have required Plaintiffs to work additional hours beyond their regular shifts but have not provide them with any additional compensation.

130.    Defendants have required Plaintiffs to perform general non-barback, non-tipped cocktail lounge tasks in addition to their primary duties as barbacks.

131.    Plaintiffs have been employed ostensibly as tipped employees by Defendants, although they have spent several hours per day performing non-tipped duties.

132.    These Plaintiffs have been paid at the lowered tip-credited rate by Defendants. However, under state law, Defendants are not entitled to a tip credit because Plaintiffs' non-tipped duties exceed 20% of each workday (or 2 hours a day, whichever is less). 12 N.Y. C.R.R. § 146-2.9.

- 19 -

133.    Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

134.    Plaintiffs' duties are not incidental to their occupation as barbacks, but instead constitute entirely unrelated general cocktail lounge work with duties including the non-tipped, non-barback duties described herein.

135.    In violation of federal and state law, as discussed above, Defendants have classified Plaintiffs as tipped employees and have paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

136.    Defendants have failed to inform Plaintiffs who received tips that Defendants intend to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

137.    Defendants have failed to inform Plaintiffs that their tips are being credited towards the payment of the minimum wage.

138.    Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

139.    Defendants willfully have disregarded and purposefully have evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

140.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

141.    Defendants' unlawful conduct has been intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and other similarly situated current and former barbacks.

142.    Defendants have failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

143.    Defendants have failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

144.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is

three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

145.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

146.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the minimum wage, overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

147.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' willful failure to keep records required by the FLSA.

148.    The claims of Plaintiffs stated herein are similar to those of the other employees.

**<u>FIRST CAUSE OF ACTION</u>**
**(VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)**

149.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

150.    At all times relevant to this action, Defendants are Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

151.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

- 22 -

152.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

153.    In violation of 29 U.S.C. § 206(a), Defendants have failed to pay Plaintiffs at the applicable minimum hourly rate.

154.    Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

155.    Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

156.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

157.    Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

158.    Defendants' failure to pay Plaintiffs, and the putative FLSA Class members, overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

159.    Plaintiffs have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

160.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

161.    At all times relevant to this action, Defendants are Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants have the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

162.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs less than the minimum wage.

163.    Defendants' failure to pay Plaintiffs the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

164.    Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK STATE LABOR LAW)

165.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

166.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

167.    Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

168.    Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

169.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

170.    Defendants have failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6.

171.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of New York Lab. Law § 663.

172.    Plaintiffs have been damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

173.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

174.    Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

175.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

176.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

177.    With each payment of wages, Defendants have failed to provide Plaintiffs with an accurate statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or

- 25 -

rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other; gross wages; deductions; allowances, if any, claimed as part of the

minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of

pay; the number of regular hours worked; and the number of overtime hours worked, as required

by NYLL 195(3).

178.    Defendants are liable to each Plaintiff in the amount of $5,000, together with

costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### (VIOLATION OF THE TIP WITHHOLDING PROVISIONS OF THE NEW YORK LABOR LAW)

179.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

180.    Defendants unlawfully and without permission from Plaintiffs have

misappropriated and have withheld gratuities paid by customers which should have been retained

by Plaintiffs.

181.    Defendants' action violates NYLL §196-d.

182.    Defendants are liable to Plaintiffs in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

183.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

184.    Defendants have required Plaintiffs to pay, without reimbursement, the costs and

expenses for purchasing and maintaining equipment and "tools of the trade" required to perform

their jobs, such as work uniforms, further reducing their wages in violation of the FLSA and

NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

185.    Plaintiffs have been damaged in an amount to be determined at trial.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA are willful as to Plaintiffs (including the prospective collective class members);

(f)    Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs (including the prospective collective class members)

liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)    Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)    Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)    Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)    Declaring that Defendants have violated the tip withholding provisions of the New York Labor Law;

(m)    Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order are willful as to Plaintiffs;

(n)    Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages and improper withholding of gratuities, as well as awarding spread of hours pay under the NYLL, as applicable;

(o)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime

compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        January 13, 2016

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     __/s/ Michael Faillace_____
        Michael A. Faillace
        60 East 42nd Street, Suite 2540
        New York, New York 10165
        Telephone: (212) 317-1200
        Facsimile: (212) 317-1620

- 29 -

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

December 7, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Aaron Miguel Flores

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    07 de diciembre de 2016

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 11, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Agustin Cabrera

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     11 de enero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

December 7, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        **Hernan Reyes**

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    07 de diciembre de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 7, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              **Marlon Andres Armijos Carrion**

Legal Representative / Abogado:            Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              07 de diciembre de 2016

*Certified as a minority-owned business in the State of New York*